UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| RONALD L. MADDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:06-CV-213 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| | ) | |
| CHATTANOOGA CITY WIDE SERVICE | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Before the Court is Defendant Chattanooga City Wide Service Department's ("Defendant") motion for summary judgment (Court File No. 122) and accompanying memorandum (Court File No. 128). *Pro se* plaintiff Ronald L. Madden ("Plaintiff") filed a response (Court File No. 135), to which Defendant filed a reply (Court File No. 137). For the following reasons, Defendant's motion for summary judgment will be **GRANTED-IN-PART** and **DENIED-IN-PART**.

**I.     RELEVANT FACTS AND PROCEDURAL HISTORY**

Plaintiff worked for Defendant as a "crew worker senior" from November 2003 until he was terminated in March 2006 (Court File No. 123, p. 5; Court File No. 124, p. 1). He alleges he was fired because of his race, black. Defendant asserts Plaintiff was fired because he set off a firecracker while working. Plaintiff admits setting off a firecracker (Court File No. 123, p. 10). He claims he did so to scare off a stray dog so as not to be bitten (*id*. at p. 28-29), and asserts it is common practice for firecrackers to be kept on Defendant's work trucks to scare away animals (*id*. at p. 18).

Another employee, Christopher Dossett, identified two white employees of Defendant who

"engaged in horseplay and the use of fireworks and/or explosives during work hours" and were not terminated (Court File No. 135-2). These incidents occurred "in plain view of management and other employees for an extended period of time" and during the time Plaintiff worked for Defendant (*id.*). Another employee, Alonzo Lewis, has witnessed "on more than one occasion, white employees using firecrackers in front of" Defendant supervisors and no one was fired as a result (Court File No. 135-3). Plaintiff contends another black employee, Travis Bell, also set off firecrackers at the same location and same day as him but was not terminated (*id.*). Plaintiff also says he once saw "somebody" throw "some firecrackers" while he "was coming out of the yard," but he does not know who threw the firecrackers or when it happened (*id.* at p. 22).

Salem Templin, a crew supervisor employed by Defendant, heard fireworks being set off while working, and Plaintiff admitted he set them off (Court File No. 126-2). Steven C. Leach, who works for Defendant as Administrator of the Department of Public Works, learned that Plaintiff had set off a firecracker in the workplace, which is not authorized (Court File No. 124, ¶ 3). James H. Templeton, who works for Defendant as Director of the Department of Public Works City-Wide Services, recommended Plaintiff be terminated for horse play after learning Plaintiff had set off a firecracker (*id.*, ¶ 4; Court File No. 126, ¶ 3). Tony Boyd, who works for Defendant as Superintendent of Street Construction, also learned Plaintiff set off a firecracker at work (Court File No. 127, ¶ 8).

Plaintiff believes a warning would have been sufficient (Court File No. 123 at p. 29). He believes his termination was unfair discipline. He also believes he has suffered other indignities at work, such as being unfairly disciplined for being late to work (*id.*). Crew workers have to report to work by 7:30 a.m. and leave with their work crews in their work vehicles by 7:45 a.m. (Court File

No. 125, ¶¶ 8-9). Employees who fail to leave with their work crews are disciplined, and Plaintiff repeatedly failed to leave with his work crew (*id*., ¶¶ 10-12). Plaintiff also believes two managers told other employees to report on Plaintiff's "anything and everything" Plaintiff did while working, such as minor mistakes in his work (Court File No. 123, pp. 13 & 25-26).

Throughout Plaintiff's employment, his job title remained the same but his job assignments were changed (*id*., p. 20). He considers himself to have been demoted by being transferred to a position not involving heavy equipment and then again when he was moved to an all-white crew outside his speciality area, and then transferred again to a different work area (id., p. 19). Supervisors employed by Defendant state Plaintiff was never demoted but was transferred at various times to make sure job assignments were completed and at other times at Plaintiff's request (Court File No. 125, ¶¶ 3 & 5; Court File No. 127, ¶ 3).

Plaintiff also alleges he experienced a hostile work environment and states he was called "n-----" (*id*., p. 14). Plaintiff heard the leader of another work crew say, "Let me have that N-word for a week and I will break him" (*id*., p. 23).[1]

Plaintiff filed grievances and complaints alleging discrimination with the City and the Equal Employment Opportunity Commission and alleges Defendant retaliated against him for filing those grievances. Leach and Templeton deny Plaintiff was fired for filing grievances or complaints (Court File No. 124, ¶ 6; Court File No. 126, ¶ 7). Twice in his deposition Plaintiff was asked how he connects his complaints alleging discrimination to his termination. The first time, Plaintiff responded by saying he was a new employee and other employees had longer relationships which

---

[1]It is not clear if this is the same incident described in the previous sentence or an additional incident.

caused supervisors to believe negative things (Court File No. 123, pp. 17-18). The second time, he responded by talking generally about other employees' behavior and saying a warning would have been a sufficient response to him setting off a firecracker (*id.*, pp. 28-29).

Plaintiff filed this case against the Defendant, various city employees, and an EEOC investigator (Court File No. 3). The Court previously dismissed all claims except those against the Defendant (Court File No. 80).

## II. STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden rests on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The moving party must demonstrate the absence of a genuine issue of material fact, but the non-movant is not entitled to a trial solely on the basis of its allegations. The non-movant must submit significant probative evidence to support its claim, and from which a jury could find for the non-movant. *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party is entitled to summary judgment if the non-movant fails to make a satisfactory showing on an essential element of its case for which it bears the burden of proof.

*Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 252; *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**III.  DISCUSSION**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*., prohibits employment discrimination.  Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  It also prohibits an employer from discriminating against an employee who has participated in an investigation under Title VII. 42 U.S.C. § 2000e-3(a).

The Court construes Plaintiff's complaint to allege three violations of Title VII, that he was (1) wrongfully terminated based on his race, (2) subjected to harassment based on race, and (3) retaliated against for participating in an investigation under Title VII.  The Court has also construed other allegations in Plaintiff's complaint.

**A.  Wrongful termination**

To establish a prima facie case of discrimination, a plaintiff can present either direct evidence of discrimination by the defendant or circumstantial evidence supporting an inference of discrimination.  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).  "The direct evidence and circumstantial paths are mutually exclusive; the plaintiff can meet her burden with either method of proof."  *Weberg v. Franks*, 229 F.3d 514, 523 (6th Cir. 2000).

Plaintiff alleges he was subjected to racial slurs but there is no evidence anyone who made

such slurs was involved in the decision to terminate him. "[C]omments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." *Carter v. Univ.of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003). Accordingly, Plaintiff has not presented direct evidence of discrimination.

Therefore, the Court will consider the circumstantial evidence Plaintiff has presented and will analyze such evidence under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Under this framework, the Plaintiff must first establish a prima facie case. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006). A prima facie case requires the plaintiff to show (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly-situated, non-protected employees. *Id.* at 707.

Defendant acknowledges Plaintiff meets the first condition, in that he is a racial minority (Court File No. 128, p. 4). Defendant does not specifically challenge the second and third conditions, and there is sufficient evidence Plaintiff suffered an adverse employment action by being fired and was qualified for the position he held. Defendant challenges the fourth condition, contending Plaintiff cannot show he was treated differently than similarly-situated non-minority employees. Specifically, Defendant states that no nonprotected employees set off a firecracker during work, so there is no one to whom Plaintiff can compare himself to establish the fourth prong of the prima facie case (*id*., p. 5). However, Plaintiff introduced evidence via Christopher Dossett's affidavit that two white employees who set off fireworks during work hours in view of management were not terminated as a result (Court File No. 135-2).

Making the comparison between Plaintiff and similarly-situated, nonprotected employees requires Plaintiff to compare his treatment with fellow employees whose employment situation is "nearly identical" in all relevant aspects. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). To be deemed similarly-situated, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Plaintiff's evidence does not specify which particular managers witnessed the white employees setting off firecrackers, merely that it occurred in view of management. Nevertheless, Plaintiff has presented sufficient evidence because, making an inference in the light most favorable to Plaintiff, the affidavits of Defendants' managers suggest that managers communicated amongst themselves about Plaintiff setting off fireworks and if any manager had witnessed employees setting off firecrackers, the incident would have been communicated to other managers who would have taken disciplinary action against the culprits (*see* Court File Nos. 124 ¶ 3, 126 ¶ 3, 127 ¶ 8). Defendant, in its reply, contends Dossett's affidavit must be viewed in light of other employees who say they have never seen any other employees set off fireworks (Court File No. 137, pp. 3-4). Defendant argues Dossett's affidavit "does not refute the testimony of the City's supervisors that they were not aware of any alleged similar conduct of an employee setting off a firecracker at a work location" (*id.* at p. 4). However, Dossett's affidavit presents sufficient evidence from which it can be inferred managers knew of similarly-situated, nonprotected employees setting off firecrackers. "[A]t the summary judgment stage, a plaintiff's burden is merely to present evidence from which

7

a reasonable jury could conclude that the plaintiff suffered an adverse employment action 'under circumstances which give rise to an inference of unlawful discrimination.'" *Blair v. Henry Filters, Inc.*, No. 05-2437, --- F.3d ---, 2007 U.S. App. LEXIS 24091, *26, 2007 WL 2983158 (6th Cir. Oct. 15, 2007) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Plaintiff's evidence creates a genuine dispute of material fact that could lead a reasonable jury to conclude Plaintiff was fired based on his race.[2]

The fourth condition also requires the similarly-situated employees to have been engaged in misconduct of "comparable seriousness" as Plaintiff's. *Harrison v. Metropolitan Gov't*, 80 F.3d 1107, 1115 (6th Cir. 1996). Plaintiff's conduct in setting off a firecracker was of comparable seriousness to the other employees who "engaged in horseplay and the use of fireworks and/or explosives during work hours." Having met all four conditions, Plaintiff has established a prima facie case and "is entitled to a presumption that the defendant discriminated against him or her in

---

[2]In its reply brief, Defendant raises the possibility this is a mixed-motive case and asks the Court to recognize an affirmative defense that Defendant "would have taken the same action in the absence of the impermissible motivating factor alleged by [Plaintiff]" (Court File No. 137, p. 5). The "ultimate question at summary judgment on a mixed-motive case is whether the plaintiff has presented evidence, direct or circumstantial, from which a reasonable jury could logically infer that a protected characteristic was a motivating factor in the defendant's adverse employment action against the plaintiff." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 712 (6th Cir. 2006) (internal quotation omitted). However, an employer's liability is limited if it can establish that it "would have taken the same action in the absence of the impermissible motivating factor." *Id.* (quoting 42 U.S.C. § 2000e-5(g)(2)(B)). Here, the evidence taken in the light most favorable to Plaintiff shows that Defendant fired Plaintiff for setting off fireworks but did not discipline two white employees who set off fireworks. This evidence leads to an inference Plaintiff was fired based on his race. To succeed on the affirmative defense, Defendant needs to show it would have fired Plaintiff regardless of his race, but Defendant cannot make such showing because of the evidence it did not fire the two white employees. Therefore, the Court cannot grant summary judgment for Defendant, regardless of whether the Court treats Plaintiff's termination as being based on a single motive or mixed motive. It is difficult for a Court to ever grant summary judgment on an affirmative defense raised by the party carrying the burden of proof. Also, Defendant did not raise this affirmative defense in its answer (Court File No. 92).

violation of Title VII." *Wright*, 455 F.3d at 706.

Because Plaintiff established a prima facie case, Defendant bears the burden of production to put forth a legitimate, nondiscriminatory reason for the adverse treatment. *Id.* Defendant articulated a nondiscriminatory reason for Plaintiff's termination, namely that he set off a firecracker while working. An employer carries its burden if it comes forward with evidence it terminated an employee for nondiscriminatory reasons. *Reeves v. Swift Trans. Co.*, 446 F.3d 637, 641-42 (6th Cir. 2006). "[A]n employee's work violations constitute a legitimate, nondiscriminatory reason for adverse employment decisions." *Walborn v. Erie County Care Facility*, 150 F.3d 584, 589 (6th Cir. 1998). Therefore, Defendant's non-discriminatory reason, that Plaintiff set off a firecracker during work, satisfies its burden.

Since Defendant met its burden, the presumption of discrimination created by the prima facie case falls away and Plaintiff needs to show Defendant's legitimate nondiscriminatory reason was a pretext for discrimination. *Wright*, 455 F.3d at 706. A plaintiff may establish pretext by showing 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). Plaintiff "must directly confront the asserted justification for the discharge." *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 550 (6th Cir. 2004). "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Macy v. Hopkins Cty. Sch. Bd.*, 484 F.3d 357, 365 (6th Cir. 2007) (citing *Burdine*, 450 U.S. at 253). By providing evidence that Defendant did not

terminate white employees who engaged in misconduct like Plaintiff's, Plaintiff has provided evidence the stated reason for his termination was not the actual reason. Accordingly, Defendant's motion to dismiss Plaintiff's unlawful termination claim will be **DENIED**.

### B. Hostile work environment

In his complaint, Plaintiff alleged he suffered racial discrimination at work, which the Court will construe as alleging a hostile work environment. Title VII prohibits racial harassment that creates a hostile or abusive work environment. *Newman v. Federal Exp. Corp.*, 266 F.3d 401, 405 (6th Cir. 2001). To establish a prima facie case of a hostile work environment based on race, a plaintiff must show: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment had the effect of unreasonably interfering with his work environment by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability. "A hostile work environment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The workplace environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. at 21-22).

In determining whether there was a hostile or abusive work environment, the Court must look to the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance." *Id.* at 787-88. Isolated incidents alone must be extremely serious to serve as a basis for liability. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000).

The statute of limitations for a Title VII action bars claims implicating actions that occurred more than 180 before a plaintiff filed an EEOC charge. 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed his charge with the EEOC on February 10, 2006, meaning claims are barred if based on actions from more than 180 days prior, which was August 14, 2005. The time limitation begins upon occurrence of each discriminatory act. *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2165 (2007) (citing *AMTRAK v. Morgan*, 536 U.S. 101, 110-112 (2002)). Thus, any alleged discriminatory act occurring before August 14, 2005 is barred.

However, it is not clear when Defendants' accusations took place or even what precisely he claims happened. The only evidence of a hostile work environment based on race is that the leader of another work crew said "Let me have that N-word for a week and I will break him" (Court File No. 124, p. 23). Plaintiff also stated he was called "n-----" but provided no indication if that was a separate incident; if it was a separate incident, there is no evidence who said it and under what circumstances. Plaintiff also alleges managers closely watched him and transferred him to other positions but provides no evidence this was based on race. In short, there is no indication Plaintiff's work environment was permeated with racial insults, that racial harassment interfered with his work environment, or that the isolated racial incident here was extremely serious. Therefore, Plaintiff cannot make out a prima facie case of a hostile work environment. Accordingly, the Court will **GRANT** Defendant's motion for summary judgment on Plaintiff's hostile work environment claim.

**C.  Retaliation**

Plaintiff's complaint alleges he was "met with reprisal" after filing complaints with the EEOC and the City of Chattanooga (Court File No. 1, ¶ 23). Plaintiff presents no direct evidence of retaliation. Without direct evidence, a prima facie case of retaliation requires Plaintiff to show (1) he engaged in protected activity under Title VII; (2) Defendant knew he engaged in the protected activity; (3) Defendant subsequently took an adverse, retaliatory action against Plaintiff; and (4) the protected activity and the adverse action were casually connected. *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004). Protected activity includes retaliation against an employee who has participated in any manner in an investigation under Title VII or who has opposed any practice by an employer made unlawful under Title VII. 42 U.S.C. § 2000e-3(a). "Once a prima facie case is established, the burden of producing some non-discriminatory reason falls upon the defendant." *Williams v. Nashville Network*, 132 F.3d 1123, 1131 (6th Cir. 1997). If the defendant demonstrates such, the plaintiff then assumes the burden of showing that the reasons given by the defendant were a pretext for retaliation." *Id.*

Plaintiff does not establish a prima facie case of retaliation because he has provided no evidence of any connection between him filing a complaint and being fired. Plaintiff was asked twice in his deposition how he connected his complaints to his termination. Both times, his responses were nonresponsive and nonsensical. He has not articulated any casual connection nor provided any evidence. Accordingly, Defendant's summary judgment motion on Plaintiff's reprisal claim will be **GRANTED**.

### D. Claims under 42 U.S.C. §§ 1981 & 1983 and Tennessee law

Plaintiff's complaint alleges causes of action based on 42 U.S.C. §§ 1981 & 1983 and Tennessee law. Section 1983 allows suits for violations of Section 1981 and is not itself a cause of

action. Section 1981 claims, as well as Tennessee law claims, are analyzed under the same framework as Title VII. *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). Accordingly, resolution of Plaintiff's claims under 42 U.S.C. §§ 1981 & 1983 and Tennessee law mirrors resolution of his Title VII claims in that his unlawful termination claim will survive and his hostile work environment and retaliation claims will be dismissed.

### E. Constitutional claims

Plaintiff's complaint also alleges Defendant violated the First and Fourteenth Amendments to the United States Constitution and Article 1 §§ 20, 29, & 33 of the Tennessee Constitution (Court File No. 1, p. 4). Plaintiff does not explain how Defendants violated the constitutions and after carefully reviewing the evidence, the Court has determined Plaintiff does not state a cognizable claim under the cited provisions of the United States or Tennessee constitutions. Accordingly, Defendant's summary judgment motion on Plaintiff's United States and Tennessee constitutional claims will be **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's claim for unlawful termination under Title VII, 42 U.S.C. §§ 1981 & 1983, and the Tennessee Human Rights Act survives summary judgment and all other claims will be dismissed. Accordingly, Defendant's motion for summary judgment will be **GRANTED-IN-PART** and **DENIED-IN-PART**.

An Order will enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**