UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| RONALD L. MADDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:06-CV-213 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| ) | |
| CHATTANOOGA CITY WIDE SERVICE ) | |
| DEPARTMENT, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM & ORDER**

The Court held a bench trial on November 13, 2007 and December 17, 2007 on *pro se* plaintiff Ronald L. Madden's ("Plaintiff") claim he was unlawfully terminated by his former employer, defendant Chattanooga City Wide Service Department ("Defendant").[1]

Plaintiff alleged he was fired based on his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101, *et. seq*. The Court heard testimony from Plaintiff and fourteen other witnesses: William Brown, Christopher Dossett, Alonzo Lewis, Donna Kelly, Johnny Holloway, Berlinda Deleon, Wanda Benton, Donald L. Norris, Wayne Wilkerson, Keith Templin, Dana Young, Tony Boyd, James Templeton, and Steven Leach. Having reviewed the testimony of the witnesses, considered the exhibits introduced at trial, the arguments and pleadings of counsel, and the applicable law, the Court, pursuant to Fed. R. Civ. P. 52, now enters the following findings of fact and conclusions of law.

---

[1] Additional claims against Defendant and against other defendants were dismissed at earlier stages of the case (Court File Nos. 60, 80, 141).

**FINDINGS OF FACT**

1. Subject matter jurisdiction in this case exists pursuant to 28 U.S.C. § 1331.

2. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

3. Plaintiff, who is African-American, worked for Defendant, which is a division of the City of Chattanooga, Tennessee, public works department. Plaintiff worked as a crew worker senior, starting November 25, 2003.

4. On March 22, 2006, Plaintiff set off a firecracker while working. Plaintiff's supervisor, Keith Templin, heard the firecracker, walked over, and asked who had set it off. Plaintiff acknowledged setting it off. Templin notified a superior, Tony Boyd, and Plaintiff was sent home from work as a result. Plaintiff was terminated the next day.

5. At other times, white employees of Defendant set off firecrackers or similar devices without facing discipline. This evidence was established from testimony by William Brown, a former employee of Defendant who voluntarily left that employment for a better opportunity; Christopher Dossett, an employee of Defendant for almost 16 years; Alonzo Lewis, an employee of Defendant for four years; and the testimony of Plaintiff himself.

6. The evidence established that Dana Young, an employee of Defendant, threw firecrackers during work hours during the week of July 4, 2005. This occurred next to the building housing Defendant's administrators, and Templin, a supervisor, witnessed the incident.

7. There was also evidence Templin himself set off firecrackers. Templin did not report the incident to any higher-ups. Young and Templin are white. While the incident was going on, Wayne Wilkerson, who manages Defendant's street construction division and is white, came out of the administration building and said to "knock off the horseplay." Wilkerson did not see who threw the firecrackers, nor did he investigate further. From Wilkerson's reaction, it does not appear such behavior was a matter for discipline; rather, it was mere horseplay that should be discouraged.

8. The evidence also established there was an incident where a white employee threw a firecracker into a moving work truck carrying African-American employees, causing them to jump out of the truck. Wilkerson and other employees were present when this happened, and no one was disciplined as a result. Based on the reaction of Wilkerson and other employees, the incident was viewed as humorous and not one warranting discipline. Since a moving motor vehicle was involved and employees jumped from the moving vehicle, this incident presented a clear case of a dangerous circumstances where a white employee was not disciplined.

9. From the testimony of the witnesses the Court concludes such incidents were not uncommon on Plaintiff's job. The Court reaches this conclusion from the description of the incidents by the witnesses, the described reactions of the participants in the incidents and employees that witnessed the incidents, and the reactions of their supervisors.

10. Wilkerson, Templin, and Young deny they have ever used firecrackers or fireworks

or seen anyone use those devices at work. However, the Court credits the testimony of Plaintiffs' witnesses that the two aforementioned incidents occurred. Plaintiffs' witnesses had no motive to lie, and their testimony was consistent and contained specific descriptions of the incidents, including Brown's testimony describing the specific type of firecrackers involved. The dates were also consistent, with descriptions of the first incident occurring in the summer of 2005 and week of July 4, 2005, when it is more likely people may possess firecrackers due to Independence Day. The blanket denials by defense witnesses are not creditable in light of Plaintiffs' evidence.

11. Tony Boyd, construction manager for Defendant, James Templeton, director of City Wide Services, and Donald Norris, deputy administrator for public works, did not hear of the other incidents involving firecrackers. They did hear of the incident involving Plaintiff. It was the first time a firecracker incident came to their knowledge. The same was true for Steven Leach, administrator of public works for the City, who was unaware of other incidents involving firecrackers. Templeton recommend Plaintiff be terminated, and Leach agreed because Plaintiff's activity was in a public place, it showed a lack of responsibility by Plaintiff, and it could have endangered other employees. Leach would have taken the same action against employees in the other firecracker incidents if he had been aware of them, but he has to rely on his subordinates to bring information to his attention.

12. The Court credits the testimony of Boyd, Templeton, Norris, and Leach. However, because the Court has concluded that the use of firecrackers or fireworks on the job

was not uncommon and there was no effort to conceal their use, these witnesses should have known that fireworks were being used. The Court will therefore attribute knowledge to them.

13. At the time Plaintiff was terminated, his hourly pay rate was $10.147, for an annual salary of $21,106.00. Since his termination, Plaintiff looked for work at a career center and has tried to get jobs at the Tennessee Valley Authority and the Chattanooga Housing Authority but was not successful. Plaintiff also briefly worked as a cook at a restaurant but at $5.85 per hour and for only 10 hours a week.

14. During negotiations with Defendant, Plaintiff was offered reinstatement in another department of the City, but he declined because he would have had to give up his law suit and go to work in a department he did not want to work in.

15. As a result of losing his job, Plaintiff could not afford his rent and was evicted. He also lost his furniture and his truck, his credit was worsened, and he filed for bankruptcy. He has suffered from embarrassment and depression. He has been forced to ask friends to allow him to live with them. There was evidence Plaintiff has become unhappy and stressed since losing his job. When the Court asked him to place a dollar figure on compensatory damages for embarrassment, mental anguish, the unsettled nature of his life, and his inability to get a job, he suggested $250,000.

## CONCLUSIONS OF LAW

1. Under Title VII and the THRA, it is unlawful for an employer to discharge an
5

individual because of such individual's race. 42 U.S.C. § 2000e-2(a)(1); Tenn. Code Ann. § 4-21-401. At this stage, the Court does not use the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). That framework is not relevant at trial, and the Court focuses only on the actual question of discrimination. *U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714-15 (1983); *Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753, 757 (6th Cir. 2004); *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997). Plaintiff has the burden of persuading the trier of fact the defendant intentionally discriminated against him. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 518 (1993) (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). The standard used is the normal standard for civil cases, preponderance of the evidence. *See Burdine*, 450 U.S. at 256.

2. The Court concludes it is more likely than not Plaintiff was terminated because of his race.

3. While white employees used firecrackers without fear of discipline from supervisors or managers, Plaintiff's use of a firecracker led to him being sent home and then terminated. Although there is no evidence any of Defendant's senior managers had actual knowledge of other incidents where employees set off firecrackers, the use of fireworks was widespread enough and was done openly so that these supervisors and managers should have known. Moreover, these managers are responsible for the information supplied to them by their subordinates. The Court concludes there was discrimination in what information was presented to them. In such a case, there must

be a "casual nexus" between the discriminatory actions and the neutral decision-maker. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 876 (6th Cir. 2001). That casual nexus exists here, where racial discrimination effected the decision to inform senior management about Plaintiff's firecracker incident, while not informing senior management about white employees who had used firecrackers during work.

4. Accordingly, the Court concludes by a preponderance of evidence Plaintiff's termination from his employment by Defendant was because of his race and in violation of Title VII and the THRA.

5. The Court may order back pay, reinstatement or other equitable relief, actual damages, and costs of the lawsuit. 42 U.S.C. § 2000e–5(g)(1); Tenn. Code Ann. §§ 4-21-306 & 4-21-311. Plaintiff is entitled to back pay for the 21 months he has been out of work. At an annual salary of $21,106, Plaintiff is entitled to $36,935.50 in back pay. Plaintiff is also entitled to actual damages for embarrassment, humiliation, mental anguish and other harms of losing his job, including being evicted from his apartment and losing property. For this, the Court will award $30,300 in actual damages. This totals $67,235.50.

6. Plaintiff is also entitled to equitable relief. Reinstatement is the "presumptively favored equitable remedy." *Roush v. KFC Nat'l Management Co.*, 10 F.3d 392, 398 (6th Cir. 1993). However, it is not appropriate in every case, including situations where there would be hostility. *Id.*

7. The Court concludes reinstatement is not appropriate in this case because of the hostility that would exist upon Plaintiff's return to work, as was evident from the

Court's assessment of the attitude of defense witnesses and Plaintiff's relationship with management. The Court will award front pay instead. *See id.* at 398-99. Although the Court cannot predict with any degree of accuracy how long it will take for Plaintiff to find and obtain a job comparable to the one he had, the Court must make a reasonable estimate based upon Plaintiff's work history, personal characteristics, and the prevailing job market in this area. The Court concludes two and one-half years is a reasonable time to award front pay. Therefore, the Court will award $52,765 in front pay.

8. This brings the total award of damages to $120, 000.50.

9. Defendant argues Plaintiff failed to mitigate. Failure to mitigate is Defendant's burden to prove. *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 557 (6th Cir. 2006). "A defendant satisfies its burden only by establishing that there were substantially equivalent positions available and that the plaintiff did not use reasonable care and diligence in seeking such positions." *Id.* Defendant failed to satisfy this burden. Defendants offered no evidence of other jobs available that were substantially equivalent to the job from which Plaintiff was terminated. The only evidence of Plaintiff's efforts to obtain employment came from the testimony of Plaintiff and his witnesses. The evidence showed Plaintiff sought other jobs but was unsuccessful in obtaining them. The one job he did get, as a cook, paid an hourly rate less than 60 percent of what Plaintiff previously earned, and the job was only 10 hours per week. This was not a substantially equivalent position, and there is no evidence Defendant was not diligent in searching for employment.

## CONCLUSION

For the foregoing reasons, the Court will enter judgment for Plaintiff and award back pay of $36,935.50, actual damages of $30,300, and front pay of $52,765, for a total of $120,000.50.

The Clerk is directed to enter a judgment.[2]

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[2] At the scheduling conference for this case, the Court advised Plaintiff, as is its standard practice for *pro se* plaintiffs, of the risk he faced by attempting to try a case in federal court without the assistance of an attorney. The Court strongly urged Plaintiff to obtain a lawyer to represent him. Plaintiff was either unable to obtain a lawyer or chose to ignore the Court's advice. Now that Plaintiff has prevailed at trial, the Court will reiterate its advice that he should retain an experienced attorney in view of the likelihood Defendant will appeal this judgment and the possibility of post-judgment settlement negotiations.